IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-00142-CMA-KLM

LIBERTY MUTUAL INSURANCE COMPANY,

    Plaintiff,

v.

ROBERT JAFFE, and
MARCI D JAFFE,

    Defendants.

## ORDER

This matter is before the Court on dueling motions for summary judgment (Docs. ## 27, 39). For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendants' Cross Motion.

### I.    BACKGROUND

In February 2016, Defendants Robert and Marci Jaffe were involved in a car accident in which their vehicle was struck by a dump truck. (Doc. # 11, ¶ 63). They brought personal injury claims against the truck's owner, Bekt Trucking, alleging that the truck driver was at fault. (Doc. # 11, ¶ 64). Defendants ultimately settled their claims against Bekt for $1 Million – Bekt's insurance policy limit. (Doc. # 11, ¶ 64).

Defendants then made a demand for underinsured motorist (UIM) coverage against their own auto-insurance carrier, LM General Insurance Company, claiming that

Bekt's $1 Million in insurance coverage was not sufficient to compensate them for their damages. (Doc. # 27, ¶¶ 4-5). LM General paid Defendants their policy limits of $250,000. (Doc. # 27, ¶ 5).

Defendants then made a third demand for insurance coverage under the , "Personal Liability Protection" ("PLP") insurance they had purchased from Plaintiff Liberty Mutual Insurance Company in in 2014, 2015, and 2016. (Doc. # 27, ¶ 6). Plaintiff denied Defendants' request and filed this lawsuit.

Plaintiff seeks a declaration it has no obligation to provide UIM coverage under Defendants' 2016 PLP policy. (Doc. # 1). Defendants concede that the 2016 PLP policy does not provide UIM coverage. (Doc. # 41, p. 2). They argue, however, that coverage is available under the 2014 and 2015 PLP polices. (Doc. # 39). Defendants have filed a counterclaim seeking a declaration that they are entitled to benefits under the 2014 and 2015 PLP policies. (Doc. # 11). Both parties now seek summary judgment.

## II.     LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the

non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*.

### III.   ANALYSIS

There is no dispute that the 2016 PLP policy does not provide UIM coverage. (Doc. # 41, p. 2). The only issue is whether Defendants are entitled to coverage under either the 2014 policy or the 2015 policy. Defendants contend that (1) "the 2014 and 2015 policies were ambiguous"; (2) "an ordinary reader and purchaser of the 2014 and 2015 policies would have understood the policies to provide [UIM] coverage"; and (3)

"Plaintiff failed to adequately advise [Defendants] of changes it made to the policy when it delivered the 2016 policy." (Doc. # 39, p. 3). "[T]herefore," Defendants argue, "Plaintiff is obligated to provide the Jaffes with the coverage a reasonable insured would have believed was available under the 2014 and 2015 policies." The Court disagrees.

A.  THE 2014 AND 2015 POLICIES DID NOT PROVIDE COVERAGE

The meaning of an insurance policy is a question of law for the Court to decide. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). An insurance policy is a contract, and it should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Huizar*, 52 P.3d at 819. Policy provisions that are clear and unambiguous should be enforced as written. *Chacon*, 788 P.2d at 750.

Where a term in an insurance policy is ambiguous, the Court will construe the term in favor of coverage. *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010). However, mere disagreement between the parties about the meaning of a term does not create ambiguity. *Union Rural Elec. Ass'n v. Public Utils. Comm'n*, 661 P.2d 247, 251 (Colo.1983). Moreover, the mere fact that a term may be susceptible to multiple interpretations, or that it may have different definitions in different contexts, does not alone create an ambiguity. *See id.*; *see also Allstate Ins. Co. v. Juniel*, 931

4

P.2d 511, 513 (Colo. App. 1996). Rather, a term is ambiguous only when it is reasonably susceptible to multiple interpretations in the context in which it is used. *Juniel*, 931 P.2d at 513. Courts may not read an ambiguity into a term where none exists. *Martinez v. Hawkeye–Sec. Ins. Co.*, 576 P.2d 1017, 1019 (Colo. 1978) ("[C]ourts will not force an ambiguity in order to resolve it against an insurer.").

Defendants argue that the language of the 2014 and 2015 PLP policies was ambiguous and could have led a policyholder to believe that the policies provided first-party UIM coverage for bodily injury to the policyholder. The Court disagrees.

Reading the plain language of the 2014 and 2015 policies[1] in the context of the polices as a whole, it is clear that the policies unambiguously did <u>not</u> provide UIM coverage to policyholders. Those policies provide: "We will pay all sums in excess of the retained limit and up to our limit of liability for damages because of personal injury or property damage to which this policy applies and <u>for which the insured is legally liable</u>." (Doc. # 32-1, p. 8 (2014 policy) and p. 28 (2015 policy)) (emphasis added). This language clearly provides coverage for damages when the policyholder is "legally liable"; not when the policyholder is injured and someone else is legally liable, as Defendants argue.

Further, this policy language is contained in the very first sentence of the section entitled "**COVERAGE**," and the reader would not have to dig into the fine print of the policy learn what coverage the policy provided. Therefore, the Court concludes that an

---

[1] Defendants concede that the terms of the 2014 and 2015 policies are "substantially identical." (Doc. # 32, p. 12, n.1). The Court will treat them as such, except where a difference between the policies is material to this analysis.

ordinary reader of the policy would have no trouble understanding that the policy covers damages "for which the insured is legally liable," and not, as Defendants argue, UIM coverage or damages for which unnamed third parties are legally liable.

Next, even if the Court were to construe the policies' coverage language to be ambiguous, any ambiguity is eliminated on the very next page of the policy, in the subsection titled "**EXCLUSIONS**." That section provides: "this policy does not apply to . . . **personal injury** to any **insured**." (Doc. # 32-1, pp. 8, 27) (emphasis in original). This language, too, is clear and unambiguous: the policies include coverage for personal injuries to the insured. Thus, an average policyholder who reads this language understand that the policy does not provide coverage for injuries to the policyholder.

Further, the rare policyholder who has difficulty understanding the terms "personal injury" and "insured" in this context would find those terms clearly defined at the very beginning of the policy, in the section titled "**DEFINITIONS**": "'**insured**' means you"; "'**personal injury**' means all forms of personal injury." (Doc. # 32-1, pp. 6, 25). Again, this language is unambiguous: the Defendants, as policyholders, were the "insureds," the policies expressly excluded coverage for "all forms of personal injury" they may experience.

No reasonably intelligent reader would read these coverages, definitions, and exclusions and believe the 2014 and 2015 PLP policies provide UIM coverage to persons insured under the policies.

Defendants do not dispute that the above language is clear, unambiguous, and understandable to the average reader. (*See* Doc. # 39). They argue, however, that

6

ambiguity enters the picture at Exclusion (m). Exclusion (m) states that the PLP policies do not provide UIM coverage: "This policy does not apply to **personal injury** or **property damage** . . . for Uninsured Motorists, Underinsured Motorists, or any other coverage unless these coverages are specifically listed on your policy declarations." (Doc. # 32-1, pp. 8-9, 27-28). Defendants do not argue that Exclusion (m) provides UIM coverage. Rather, they argue that "[a]n insured who encountered Exclusion (m)" would engage the following 5-step process of research and reasoning to ultimately conclude that the PLP policy included UIM coverage:

(1) First, the policyholder would look at the PLP policy declarations page:

> "An insured who encountered Exclusion (m) while reading the policy for the first time and wished to determine whether the policy provided excess UM/UIM benefits would first look to the PLP Policy's declarations page." (Doc. # 39, p. 14).

(2) Next, he would analyze his coverage limits:

> "Upon [looking to the PLP Policy's declarations page], he or she would be confronted with the 'Coverage Information' section. This would indicate to the insured that the policy provided $3,000,000 in 'Personal Liability' protection." (Doc. # 39, p. 14).

(3) Then he would be confused by the term "Personal Liability":

> "However, the term 'Personal Liability' is not defined, and can reasonably be read to be a tautological reference to type of policy – a Personal Liability Protection Policy." (Doc. # 39, p. 14).

(4) Then he would decide that he needed to look at his auto-liability policy:

> "Under the circumstances, an insured who was attempting to determine whether the PLP Policy provided UM/UIM coverage would reasonably look to the underlying policy's

7

>    declarations to determine whether UM/UIM coverage was listed." (Doc. # 39, p. 15).

(5)   Upon reading the auto-liability policy, the insured would conclude that the PLP policy *does* provide coverage.

>    "Here, [Defendants'] auto policy indicated that they had UM/UIM coverage." (Doc. # 39, p. 15).

The Court is not persuaded.[2] Defendants would have the Court read an ambiguity into the PLP policies where none exists. The Court declines to do so. The plain language of the 2014 and 2015 PLP policies did not provide first-party UIM coverage to Defendants, and their counterclaims must fail as a matter of law.

Defendants argue, however, that even if the 2014 and 2015 PLP policies are not "technically ambiguous," the Court should nevertheless "construe the policy in favor of coverage under the doctrine of reasonable expectations, because an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue." (Doc. # 39, p. 15). The Court disagrees. As explained above, an "ordinary, objectively reasonable person" would not reach the coverage conclusions Defendants endorse. Neither Defendants nor any ordinary, reasonable person would believe that the PLP policies provided UIM coverage under the circumstances of this case. Therefore the Court will not find coverage under the doctrine of reasonable expectations.

---

[2] There is actually a sixth step in Defendants' proposed analysis, in which, the policyholder returns to the PLP policy, concludes that the $3,000,000 policy limits in the PLP policy supersede the $250,000 limits of the auto-liability policy, and surmise that he is entitled to $3,000,000 in UIM benefits under the PLP policy. The Court need not address this aspect of Defendants' arguments to resolve this matter.

Because Defendants' remaining arguments depend on the existence of an ambiguity in the 2014 and 2015 PLP policies, the Court need not address those arguments.

## B.   PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, the Court may enter a judgment declaring "the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201. As explained above, the parties' respective rights and obligations are clear. Plaintiff has no obligation to pay UIM benefits under any of the PLP policies, and Defendants have no right to recover under those policies. Further, the parties agree that there is no genuine issue as to any material fact. (Doc. # 39, p. 20). Therefore, the Court concludes that Plaintiff is entitled to summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. # 27) is GRANTED. Defendants' Motion for Summary Judgment (Doc. # 39) is DENIED. It is

FURTHER ORDERED that any motions for costs or fees shall be filed within 21 days of the date of this Order.

The Clerk is directed to enter judgment in favor of Plaintiff and against Defendants on all claims asserted in this case.

DATED: March 31, 2021

                                                    BY THE COURT:

                                                    _____
                                                    CHRISTINE M. ARGUELLO
                                                    United States District Judge